<div style="float:right">Commonwealth
v.
Blackington.</div>

The Court are all of opinion, that there was no error in the decisions and instructions of the Court of Common Pleas, and the exceptions are overruled.

## COMMONWEALTH *versus* BENJAMIN KIMBALL.

The provisions in Revised Stat. *c.* 47, that no person shall presume to be a retailer or seller of spirituous liquors in a less quantity than twenty-eight gallons, unless he is first licensed as a retailer of spirits, and that every person thus licensed shall pay one dollar therefor, in their application to a sale not made by the importer nor in the original package in which the spirit was imported, are not repugnant to the clause in the constitution of the United States, that no State shall lay any imposts or duties on imports or exports, except &c., nor to the clause, that congress shall have power to regulate commerce with foreign nations and among the several States.

THIS was an indictment founded on Revised Stat. *c.* 47, § 3, for selling spirituous liquors by retail without a license. At the trial, in the Common Pleas, before *Cummins* J., the jury were instructed, that that section was not repugnant to, nor inconsistent with, the constitution or any of the statutes of the United States. The defendant, being convicted, excepted to this instruction.

The Revised Statutes provide, in *c.* 47, § 3, that "no person shall presume to be a retailer or seller of wine, brandy, rum, or other spirituous liquors, in a less quantity than twenty-eight gallons, &c. unless he is first licensed as a retailer of wine and spirits," on pain of forfeiting $20 for each offence ; in § 20, that every person who shall be so licensed, shall pay therefor one dollar for the use of the county, &c. and twenty cents for the use of the clerk, &c. ; and in § 23, that no license shall be granted to any person unless he shall produce a certificate of the selectmen &c., that the public good requires that a license should be granted to him, and that he is a person of good moral character.

*Rantoul*, *Cushing* and *Ward*, in support of the exceptions, referred to Const. U. S. *art.* 1, § 8, 10 ; Laws of U. S. 1827, *c.* 212 ; 1832, *c.* 224 ; *Mᶜ Culloch* v. *State of Maryland*, 4 Wheaton, 406, 426, 436 ; ·*Brown* v. *State of Maryland*, 12 Wheaton, 419, 437, 439, 444 ; *Gibbons* v. *Ogden*, 9 Wheaton, 1.

*Austin*, Attorney-General, for the Commonwealth, cited *Brown* v. *State of Maryland*, 12 Wheaton, 419 ; *City of New York* v. *Miln*, 11 Peters, 102.

SHAW C. J. afterward drew up the opinion of the Court. The only exception taken to this conviction, and to the instructions of the judge, in point of law, is, that the law of this Commonwealth, prohibiting any person from selling wine, brandy, rum or other spirituous liquors by retail without license, is repugnant to the constitution and laws of the United States, and consequently inoperative and void.

It has already been remarked in another of this class of cases, argued at the present term, that in considering the constitution and laws of the United States and those of the several States, and deciding whether their respective provisions do come in conflict or not, and to what extent, it is proper and absolutely necessary to have a just regard to the laws and institutions of the country, and of the respective States, as they existed before the formation and adoption of the constitution of the United States, and to the objects and purposes had in view, by that constitution. The great and leading object of this complex system of government was, to select a few great and important subjects of administration, in which all the States, and the people of all the States, had a common interest, to confide them to the general government, with all the collateral, incidental and implied powers, proper and requisite to enable that government to conduct and administer them, in all their details, and to organize a system with all the executive, legislative and judicial powers and functions, necessary to the full and entire performance of all the duties of such a government. All other powers of sovereign government, necessary or proper, to provide for the peace, safety, health, morals and general welfare of the community, remain entire and uncontrolled, to the State government ; and in the

exercise of them, they have the right and power to resort to all adequate and appropriate means, for carrying these powers into effect, unless they shall happen, in any particular instance, to come directly in conflict with the operation of some law of the United States made in pursuance of its enumerated powers. In the latter case, inasmuch as it is declared and admitted that the constitution of the United States, and all laws and treaties made in pursuance of its just powers, shall be the supreme law of the land, it follows as a necessary consequence, that, to the extent of such collision and repugnancy, the law of the State must yield, and to that extent and no further, it is rendered by such repugnancy, inoperative and void.

It is contended that the laws in question prohibiting the sale of brandy, rum and other spirits, by any person within this Commonwealth, without being first duly licensed, is contrary to that provision in the constitution of the United States, which prohibits the.several States from laying any duty or impost, upon imports or exports, except such as may be absolutely necessary, to enforce and carry into effect, their respective inspection laws, and also that it is repugnant to that clause, which confides to the general government the power to regulate commerce with foreign powers, and amongst the several States.

The power to regulate licensed houses, and to provide for the regulation of the sale of spirituous liquors, in such manner as to guard against abuses, and to prevent the evils of disorderly houses, breaches of the peace, riot, immorality and pauperism, is an acknowledged power of the State government; it had long been in active operation, in this State, and no doubt in other States, before the constitution of the United States was adopted. It is not to be presumed, that the constitution was intended to inhibit or restrain the exercise of so useful and necessary a power, unless it shall so appear by plain words, or necessary implication. The burden is upon those who would set up and enforce the restraint, to establish it, by showing that the constitution, by particular provisions, or in the accomplishment of its general purposes, necessarily interferes with it.

The power to direct and regulate the mode of selling, by

citizens of the State and within its own territories, is one of the acknowledged powers of State government, which never has been and never can be questioned. It is in virtue of this power, that all laws respecting hawkers, pedlers, auctioneers, and others, are made. This consideration affords a view decisive of the present case. The law in question, neither in its terms nor its operation, professes to prohibit the sale of im ported spirits, by the importer, either by wholesale or by retail, nor do these laws propose to raise a revenue upon the licenses granted   But it is argued for the defendant, that the prohibition to sell is general, and makes no distinction between the cases of a sale by the importer of imported spirits, in the original packages, supposing them under twenty-eight gallons, and the sale of spirits not imported, or not by the importer, or not in the original packages. Be it so ; what is the consequence ? Supposing the law could be construed to be repugnant to the constitution of the United States, in so far as it prohibited the sale of imported spirits by the importer in the original package, it would be void thus far and no further, and in all other respects conforming to the acknowledged power of the State government, it would be in full force. Whether legal enactments, some of which it is competent for the legislature to make, and others not, are contained in the same or in different sections of a statute, can make no difference. It is not the defect of form, but of power, that invalidates any of them; it is, therefore, the subject matter, and not the arrangement of the language in which it is embodied, that is to be regarded in deciding whether any provision is constitutional or not. If therefore the defendant had offered to show in his defence, that the spirits charged to have been illegally sold by him, without license, contrary to the statute, were imported by himself, and sold in the original package, it would then have given rise to the question which has been mainly argued in the present case. But no such evidence was offered, nor has it been intimated, that such was the fact ; on the contrary, it is, as far as appears by the report, the ordinary case of the sale of spirits at retail, either domestic distilled spirits, or foreign spirits which had been sold by the importer, and become mixed up with the general mass of that class of merchandise offered for sale in small quantities by the retailer.

But under the circumstances, in which the case has been brought before the Court, we think it proper to place this decision upon broader grounds. We are of opinion that these laws fall clearly within that large class of powers necessary to the regulation of the police, morals, health, internal commerce, and general prosperity of the community, which are fully subject to State regulation ; and that the objects to be accomplished by them, are to be reached and effected by any appropriate means, which do not interfere with the exercise of any of the powers vested in the general government. These various objects are alluded to, and partially enumerated, by Mr. Chief Justice *Marshall*, in delivering the opinion of the court in the leading case of *Gibbons* v. *Ogden*, 9 Wheaton, 203. He is speaking of " that immense mass of legislation, which embraces every thing within the territory of a State, not surrendered to the general government : all which can be most advantageously exercised by the States themselves. Inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a State, are component parts of this mass."

The proposition upon which the Court rest this decision is this, that to promote the peace, order, and security of the community, to prevent the evils of vice, riot, pauperism, and the temptation to crime, by securing and enforcing due regulations for the control and superintendence of the houses and places where spirituous liquors are to be sold, is an important subject of internal police ; that it was, before the adoption of the con stitution of the United States, and still is, within the jurisdiction of the State government, never having been confided to the general government ; and that the laws of Massachusetts, on which this indictment is founded, do not, by any of the means adopted to accomplish this useful and legitimate end, interfere with the laws of the United States.

The case mainly relied on by the counsel for the defendant, is that of *Brown* v. *The State of Maryland*, 12 Wheaton, 419. That case turned upon the effect of a law of the State of Maryland, prohibiting every importer of foreign goods from selling the same, by wholesale, bale, or package, without first taking out a license, and paying fifty dollars therefor. It was

held that this law was directly repugnant to that clause in the constitution, which prohibits the States from laying a duty on imports, it being held that taxing a license on the sale *by the importer*, was equivalent to a tax on the goods imported, or on imports. It was obviously an act for raising a revenue, and in accomplishing that purpose, was directly repugnant to the clause in the constitution already cited, and also to the provision vesting in the general government the exclusive power to regulate commerce. But the principles adopted by the majority of the court in that case, are such as clearly to exclude the present. It had been strongly pressed in argument in that case, that if the right to import gave the importer a right to sell, which could not be controlled by a State law, such right was absolute and unconditional, and gave him a right to sell in any manner, as at auction, or by retail, or as a hawker and pedler ; also to sell in any place and in any manner he pleased, and this in regard to any species of commodities, however danger- ous to life or health, as gunpowder or infected goods ; and so would prohibit the States from making such laws as the health and safety of the citizens might require. This argument is distinctly repelled by the court, who hold, that the privilege at- taches to the importer only whilst he holds the goods in the original packages, and as importer ; and when he has once mixed them with the general property of the community by breaking up his packages, his privilege of importer has ceased, and the property, thus mixed with the general mass, is liable to State regulation. So of gunpowder, say the court, the power to direct its removal, is a branch of the police power, which unquestionably remains, and ought to remain, with the States. The case proceeded wholly on the ground, that the law was repugnant to the constitution and law of the United States, by imposing a duty on the wholesale dealer, be he the importer or otherwise, selling in the original package, before the goods were opened and exposed for sale by retail to the consumer, and that when so opened and exposed to sale, and mixed up with the general mass of saleable commodities, they were subject to State legislation, so far as the police laws, and general laws of the State, intended to promote the peace of the State and the welfare of its citizens, applied to such com- modities, in common with all others of like kind.

The power to pass laws for regulating licensed houses, as one of the powers of general police, is clearly vested in the State, and is as clearly not vested in the general government. But in carrying into effect a law, flowing from one of the acknowledged powers of the State, they may resort to means, which, in their operation, would oppose or impede a law of the United States, made in pursuance of its acknowledged powers. In such case, the law of the State must yield, so far as it can have this effect. But as already stated, such conflict is not to be presumed, but on the contrary it must be clearly shown and established. In the present case, it is not shown, nor can we presume, that the law regulating the sale of spirituous liquors by retail, and confining the power to sell in that form, to those who shall first have obtained the recommendation of the proper officers, for that employment, will frustrate, defeat, or impede any law of the United States. Such license will afford some reasonable assurance to the community that the persons recommended and licensed are of good moral character, of orderly and sober habits, who will be likely to render such places of sale as little injurious to the peace and good order of society, as circumstances will admit.

The exception to the instruction of the judge of the **Court of Common Pleas** in this respect, is overruled.